IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.:

THE NOTORIOUS SKIPPER, LLC as

ASSIGNEE OF NICHOLAS D. DICELLO Plaintiff,

vs.

FERRETTI S.p.A.,

ALLIED MARINE, INC a/k/a FERRETTI GROUP USA, INC

a/k/a FERRETTI GROUP USA, and

FERRETTI GROUP OF AMERICA, LLC a/k/a FERRETTI GROUP

Defendants.

_____/

## **COMPLAINT**

**COMES NOW** the Plaintiff, THE NORTORIOUS SKIPPER LLC as assignee of NICHOLAS D DICELLO, by and through undersigned counsel, and sues Defendants, FERRETTI S.p.A., ALLIED MARINE, INC and FERRETTI GROUP OF AMERICA LLC and alleges:

## **PARTIES AND JURISDICTION**

1. This is an action for breach of express and implied warranties pursuant to the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, et al. in an amount exceeding $1,000,000 and for Revocation of Acceptance under Florida Statute §672.608 in an amount exceeding $1,000,000.00.

2. This is an action that is within the jurisdiction of this Court pursuant to federal question jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §2310(d). All claims set forth herein arise from the same operative facts and should be disposed of in a single proceeding.

3. This Court has supplemental jurisdiction to the extent required to adjudicate any state law claims necessary to address all issues and claims raised in the pleadings. The events, acts, and circumstances giving rise to this action occurred in Florida and venue is proper within this District.

4. At all times material hereto, Plaintiff is a single member Florida Limited Liability Corporation domiciled in Broward County owned by Nicholas D DiCello as Authorized Member and is the owner of a certain 2020 80X Pershing Yacht Hull number 06 (hereinafter "PERSHING") which is the subject of this litigation.

**FERRETTI S.p.A.**

5. At all times material hereto FERRETTI S.p.A. is an Italian multinational shipbuilding company headquartered in Italy which specializes in the design, construction and sale of luxury motor yachts. Its products are sold under the brands Ferretti Yachts, Custom Line, Pershing, Itama, Riva, Mochi Craft and CRN.

6. FERRETTI S.p.A. is 100% owner of Defendants ALLIED MARINE, INC and FERRETTI GROUP OF AMERICA, LLC.

7. FERRETTI S.p.A. entered into a written Organisation, Management and Control Model Pursuant to Italian Legislative Decree 231/2001 in which it adopted corporate governance structures and risk prevention systems to stop managers, executives, employees and external collaborators from committing crimes and to shield itself from criminal and civil penalties for acts committed in Italy as well as abroad such as in this case the United States of America.

8. The corporate purpose of creation of the FERRETTI S.p.A. Control Model is stated as:

> Ferretti S.p.A. has deemed it necessary to draw up an Organisational Model
> in line with the measures of Italian Legislative Decree No. 231 of 2001 and

with the Confindustria Guidelines of 07/03/2012 and subsequent amendments and supplements (March 2014), in order to ensure conditions of fairness and transparency when conducting corporate transactions and business.

The model is intended to describe the operational procedures adopted and the responsibilities assigned at Ferretti S.p.A.

The Company believes that its adoption of this Model constitutes, in addition to the measures of law, a valid instrument to inform and raise awareness among not only all its employees (consultants, partners, suppliers, etc.), who carry out their own activity in the name and on behalf of Ferretti, but also all those who interact with it.

9.  The Control Model adopted by FERRETTI S.p.A. resulted in FERRETTI S.p.A.:

    a.  creating a Code of Ethics which governs the principles of conduct with which all employees must comply;

    b.  identifying an organizational structure capable not only guaranteeing a clear, organic distribution of duties and implementing segregation of functions, but also of inspiring and monitoring the propriety of all its employers' conduct;

    c.  formalizing a manual and computerized corporate procedures intended to regulate implementation of the activities (the monitoring instrument of "separation of duties" between those implementing crucial phases in a process at risk is especially effective from a preventive viewpoint);

    d.  informing all staff effectively, clearly and in detail not only of the Code of Ethics, corporate procedures, the penalty system, the powers of authorization and signature, but also of all the appropriate instruments to prevent unlawful acts from being committed;

    e.  preparing a suitable penalty system.

10. The Control Model expressly applies to all members of the FERRETTI GROUP including defendants ALLIED MARINE, Inc dba FERRETTI GROUP USA and FERRETTI

GROUP of AMERICA, LLC dba FERRETTI GROUP in which FERRETTI S.p.A. is the parent company.

11. The Control Model states:

. . . . Ferretti Group has decided to operate according to ethical principles aiming to ensure the business activity, corporate purpose and development of all its subsidiaries comply with the laws in force in their respective legal systems.

Thus, **Ferretti Group has adopted a Code of Ethics aiming to identify a series of behavioral principles, which the Companies in the Group acknowledge as their own, and with which compliance by the corporate bodies, employees and all those who collaborate and cooperate for any reason with the different companies in the Group is mandatory.** (Emphasis Supplied)

12. At all times material FERRETTI S.p.A. was the registered owner of the URLs "Ferrettigroup.com", "Ferrettigroupamerica.com" and "Pershing-yachts.com")

13. At all times material FERRETTI S.p.A. engages in a worldwide advertising campaign which includes consumers in Florida to promote and sell the boats in manufactures under its brand including Pershing Yachts.

14. Ferretti S.p.A. was the actual Seller of the Yacht despite the artifice of using FERRETTI OF AMERICA doing business as FERRETTI GROUP as a strawman seller.

15. Addendum #1 to the Purchase and Sale Agreement created a sale between FERRETTI S.p.A. and Plaintiff whereby FERRETTI S.p.A. identified as Seller was to avoid Italian Value Added Tax by transferring title from FERRETTI S.p.A. to Plaintiff on or before April 15, 2020 at a location off the coast of Fano Italy.  And further, if required by the Italian Tax and/or Custom Authority to be exempt for the Value Added Tax the transfer of title from Ferretti S.p.A to Plaintiff was to occur in Montenegro.

16. FERRETTI S.p.A. identified as Seller was to provide Plaintiff with a slip at the Marine in Fano, Italy until May 15, 2020.

**ALLIED MARINE, INC a/k/a FERRETTI GROUP USA, INC a/k/a FERRETTI GROUP USA**

17. At all times material hereto, Defendant ALLIED MARINE, INC. (hereinafter referred to as "ALLIED MARINE" or "ALLIED MARINE INC".) is a Florida Corporation with its principal place of business and legal address at 1445 SE 16th Street, Fort Lauderdale, Florida and does business as FERRETTI GROUP USA.

18. On August 24, 2010 FERRETTI GROUP USA, INC merged corporately with ALLIED MARINE, INC in which ALLIED MARINE, INC was the surviving entity.

19. FERRETTI GROUP USA is the fictitious name registered to ALLIED MARINE.

20. ALLIED MARINE conducts business under it own name and the name of FERRETTI GROUP USA.

21. ALLIED MARINE is owned 100% by FERRETTI S.p.A.

22. ALLIED MARINE is under the corporate control of FERRETTI S.p.A.

23. At all times material hereto, Defendant ALLIED MARINE, INC. was part of the "Ferretti Group' (as identified in the FERRETTI S.p.A Control Model) subject to the Code of Ethics promulgated by FERRETTI, S.p.A.

24. At all times material hereto, Defendant ALLIED MARINE, INC. was part of the "Ferretti Group" (as identified in the FERRETTI S.p.A Control Model) subject to Control Model promulgated by FERRETTI, S.p.A.

25. ALLIED MARINE's Director, Vice president, Controller and Secretary is Simone Meletti who is employed by Ferretti S.p.A. in Forli Italy as its Group Sales and Marketing

Controller. Previously, Simone Meletti worked for FERRETTI S.p.A. as the Group Financial Controller.

26. Simone Meletti is described internally as the Managing Director for the Americans or the Managing Director of America's.  Meletti signs contracts as Vice President and authorized corporate officer.

27. At all times material hereto ALLIED MARINE INC., doing business as FERRETTI GROUP USA, INC was the apparent and actual agent of FERRETTI S.p.A.

28. ALLIED MARINE advertises to the public it is the Exclusive Dealer for Pershing Yachts in the United States East Coast.

29. FERRETTI S.p.A. disclosed, ALLIED MARINE is the "exclusive dealer on the eastern coast of the United States for the Group's new yachts," in a prospectus relating to admission to listing on the Electronic Share Market organized and managed by Borsa Italiana S.p.A. of Ordinary Shares of Ferretti S.p.A.

30. ALLIED MARINE's URL "alliedmarine.com" is registered to FERRETI GROUP of AMERICA, dba FERRETTI GROUP which is a seller of the PERSHING.

31. At all times material ALLIED MARINE's website's Privacy Statement discloses FERRETTI S.p.A. as the collector and recipient of users' private data.

32. At all times material ALLIED MARINE was the Supplier of the PERSHING.

33. At all times material ALLIED MARINE dba FERRETI GROUP USA was the warrantor of the PERSHING.

34. At all times material ALLIED MARINE was the manufacturer of the PERSHING.

35. The Manufacturers Identification Code embedded in the Hull Identification Number of the PERSHING (XFAP8X06C020) sold to plaintiff is registered to FERRETTI GROUP USA (ALLIED MARINE) in filings with the United States Coast Guard.

36. At all times material ALLIED MARINE's registered Trademarks were owned by Ferretti Group of America Holding Company, Inc a Delaware company not registered to do business in Florida

37. At all times material Ferretti Group of America Holding Company, Inc. was a wholly owned subsidiary of FERRETTI S.p.A.

38. At all times material Simone Meletti is an officer of Ferretti Group of America Holding Company, Inc.

## FERRETI GROUP of AMERICA, LLC dba FERRETTI GROUP

39. At all times material hereto, Defendant FERRETTI GROUP OF AMERICA, LLC was a Florida Limited Liability Company with its principal place of business and legal address at 1445 SE 16th Street, Fort Lauderdale, Florida.

40. At all times material hereto FERRETTI GROUP OF AMERICA, LLC was the owner and the fictitious name FERRETTI GROUP.

41. At all times material hereto FERRETTI S.p.A was the parent company of the FERRETTI GROUP OF AMERICA, LLC dba FERRETTI GROUP..

42. At all times material hereto FERRETTI GROUP OF AMERICA, LLC was owned 100% by FERRETTI, S.p.A.

43. At all times material hereto FERRETTI GROUP OF AMERICA, LLC was controlled by FERRETTI S.p.A.

44. FERRETTI GROUP OF AMERICA, LLC is under the corporate control of FERRETTI S.p.A.

45. At all times material hereto, Defendant FERRETTI GROUP OF AMERICA, LLC. was part of the "Ferretti Group" (as identified in the FERRETTI S.p.A Control Model) subject to the Code of Ethics promulgated by FERRETTI, S.p.A.

46. At all times material hereto, Defendant FERRETTI GROUP OF AMERICA, LLC. was part of the "Ferretti Group" (as identified in the FERRETTI S.p.A Control Model) subject to Control Model promulgated by FERRETTI, S.p.A.

47. FERRETTI GROUP OF AMERICA, LLC's Managing Director, Vice president, Controller and Secretary is Simone Meletti who is employed by Ferretti S.p.A. in Forli Italy as its Group Sales and Marketing Controller. Previously, Meletti worked for FERRETTI S.p.A. as the Group Financial Controller.

48. At all times material hereto FERRETTI GROUP OF AMERICA, LLC, doing business as FERRETTI GROUP was the apparent and actual agent of FERRETTI S.P.A.

49. At all times material hereto FERRETTI GROUP OF AMERICA, LLC, doing business as FERRETTI GROUP was the registered owner of ALLIED MARINE dba FERRETI GROUP USA's website (alliedmarine.com) and as such does business under the name of ALLIED MARINE .

50. At all times material hereto FERRETTI GROUP OF AMERICA, LLC, doing business as FERRETTI GROUP's URL "Ferrettigroup.com" and "Ferrettigroupamerica.com" were owned by FERRETTI S.p.A.

51. At all times material both FERRETTI GROUP OF AMERICA's websites' Privacy Statement lists FERRETTI S.p.A. as the collector and recipient of users' private data.

52. At all times material FERRETTI GROUP OF AMERICA, LLC was a Seller of the PERSHING.

## FACTS COMMON TO ALL COUNTS

53. At all times material hereto FERRETTI S.p.A.; ALLIED MARINE INC., doing business as FERRETTI GROUP USA, and FERRETTI GROUP OF AMERICA, LLC doing business as FERRETTI GROUP acted in concert to effectuate the sale and distribution of vessels in the United States and particularly in Florida which were manufactured by FERRETTI S.p.A. in Italy but also identified the subject PERSHING's manufacturer as ALLIED MARINE dba FERRETTI GROUP USA.

54. The Pershing Yachts website (www.pershing-yachts.com) is owned by Ferretti S.p.A. with country of origin as Italy.

55. Upon information and belief FERRETTI S.p.A. controlled and oversaw the operations and conduct of business of ALLIED MARINE INC., doing business as FERRETTI GROUP USA, INC and FERRETTI GROUP OF AMERICA, LLC doing business as FERRETI GROUP.

56. FERRETTI S.p.A. is identified in the FERRETTI GROUP USA LIMITED WARRANTY as the manufacturer of the of 2020 Pershing 8X – 06 (herein after "PERSHING") which is the subject matter of this action and delivered the vessel to the United States for sale to consumers.

57. The FERRETTI GROUP USA LIMITED WARRANTY does not disclose ALLIED MARINE dba FERRETTI GROUP USA as the manufacturer of the PERSHING.

58. ALLIED MARINE, LLC a/k/a FERRETTI GROUP USA, individually and as agent of FERRETTI S.p.A. marketed for sale the PERSHING through its Sales Executive Peter Hopwood.

59. ALLIED MARINE doing business as FERRETTI GROUP USA through its Sales Executive Peter Hopwood was the Selling Broker on the sale of the PERSHING to Plaintiff.

60. ALLIED MARINE d/b/a FERRETTI GROUP USA and its Sales Executive Peter Hopwood received a commission as the selling broker from the sale of the PERSHING to Plaintiff.

61. FERRETTI GROUP OF AMERICA d/b/a FERRETTI GROUP individually and as agent of FERRETTI S.p.A. entered into a contract for sale of the subject PERSHING to Nicolas D. DiCello which was assigned to The Notorious Skipper, LLC.

62. ALLIED MARINE dba FERRETTI GROUP USA represented through its Sales Executive Peter Hopwood that a warranty on the yacht was to be given to the purchaser by the manufacturer which is FERRETTI S.p.A.

**ALLIED MARINE AND FERRETTI GROUP OF AMERICA ARE ALTER EGOS OF FERRETTI S.p.A.**

63. FERRETTI S.p.A intentionally and cunningly created a corporate maze in an attempt to deceive consumers and to shield itself from Federally created remedies under the Magnusson Moss Warranty Act and certain remedies under state law.

64. FERRETTI S.p.A created a structure in which its "exclusive dealer [ALLIED MARINE] on the eastern coast of the United States for the Group's new yachts" did not sell the yacht. Instead its wholly owned subsidiary FERRETTI GROUP of AMERICA dba FERRETTI

GROUP sold the yacht while the "exclusive dealer" ALLIED MARINE became the warrantor under its fictitious name, FERRETTI GROUP USA and was disclosed as the manufacturer on the PERSHING's Hull Identification Number under the fictitious name of FERRETTI GROUP USA which is owned by ALLIED MARINE..

65. The PERSHING was marketed to Plaintiff by ALLIED MARINE dba FERRETTI GROUP USA Sales Executive Peter Hopwood.

66. Throughout the transaction leading up to closing, the Plaintiff's contact with the Seller was through ALLIED MARINE's Sales Executive, Peter Hopwood.

67. Neither Peter Hopwood nor ALLIED MARINE disclosed their relationship with FERRETTI GROUP AMERCIA d/b/a FERRETI GROUP or FERRETTI S.p.A.

68. Despite FERRETTI S.p.A. creating a second entity [FERRETTI GROUP of AMERICA dba FERRETTI GROUP] to sell the PERSHING instead of through its "exclusive dealer" [ALLIED MARINE d/b/a FERRETTI GROUP USA], ALLIED MARINE's Broker Chris Coughlin appears on FERRETTI GROUP of AMERICA's Purchase and Sale Agreement as its "Sales Executive."

69. Both ALLIED MARINE d/b/a FERRETTI GROUP USA and FERRETTI GROUP of AMERICA d/b/a FERRETTI GROUP share the same address of 1445 SE 16th Street, Fort Lauderdale.

70. Both ALLIED MARINE d/b/a FERRETTI GROUP USA and FERRETTI GROUP of AMERICA d/b/a FERRETTI GROUP share the same address identified as the Ferretti Regional Office

71. Both ALLIED MARINE d/b/a FERRETTI GROUP USA and FERRETTI GROUP of AMERICA d/b/a FERRETTI GROUP share the same corporate officers, Director, Vice President and Secretary.

72. FERRETTI GROUP of AMERICA's Purchase and Sale Agreement deceptively recites that FERRETTI GROUP of AMERICA is not a manufacturer of Yachts when in fact FERRETTI GROUP of AMERICA d/b/a FERRETTI GROUP is owned 100% by the manufacturer, with its web addresses www.ferrettigroupamerica.com, www.pershing-yachts.com and www.ferrettigroup.com registered to the manufacturer FERRETTI S.p.A..

73. The copyrights on the FERRETTI GROUP AMERICA and FERRETTI GROUP websites are registered to Ferretti S.p.A..

74. The privacy disclosures on the FERRETTI GROUP AMERICA, FERRETTI GROUP and Pershing Yachts websites refer to Ferretti S.p.A. as the collector and recipient of users' private data.

75. The FERRETTI GROUP AMERICA and FERRETTI GROUP websites contain FERRETTI S.p.A.'s VAT Number.

76. The FERREETI GROUP of AMERICA website contains direct links to FERRETI S.p.A. corporate website.

77. Both ALLIED MARINE d/b/a FERRETTI GROUP USA and FERRETTI GROUP of AMERICA d/b/a FERRETTI GROUP are subject to FERRETTI S.p.A.'s Control Model and Code of ethics.

78. ALLIED MARINE a supposedly separate legal entity does not even own its own Trademarks.  Instead the Trademarks are owned by FERRETTI GROUP of AMERICA HOLDING COMPANY, INC another wholly owned subsidiary of FERRETTI S.p.A.

79. FERRETTI S.p.A. includes financial results from the operations of ALLIED MARINE d/b/a FERRETTI GROUP USA and FERRETTI GROUP of AMERICA d/b/a FERRETTI GROUP on its Financial Reports and stock prospectus.

80. FERRETTI GROUP of AMERICA, INC's Purchase and Sale Agreement though claiming it is the seller and not the manufacturer or warrantor contains a contractual attempt to disclaim "ANY AFFIRMATION OF FACT OR PROMISE WRITTEN OR VERBAL MADE BY FERRETTI GROUP USA, OR MANUFACTURER WILL NOT BE DEEMED TO CREATE AN EXPRESS WARRANTY THAT THE YACHT WILL CONFORM TO THE AFFIRMATION OR PROMISE"  This contractual overreaching and commingling of the parties combined with the facts set forth above is clear evidence of the singular dominant mind and control over the entire sale and warranty process by FERRETTI S.p.A. to the detriment of the consumer.

81. The scheme devised by FERRETTI S.p.A. created a joint venture between FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP.

82. The three companies are so intertwined and interlocked that they essentially indistinguishable and are one company under a single dominant mind and control.

83. FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP share common interest, common control and shared financial interests

84. FERRETTI S.p.A. permitted ALLIED MARINE to be registered as the manufacturer of the PERSHING in an attempt to hide or shelter FERRETTI S.p.A. from liability associated with the yachts it builds.

85. FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP share a common purpose in the sale of vessels to consumers in the United States such as the Plaintiff. Upon information and belief FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP had joint or shared control over the aspects the venture including advertising, merchandizing, sales conditions and service of the vessel among others.

86. Upon information and belief FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP had a joint proprietary and / or ownership interest in the time and labor expended in selling, marketing and servicing vessels in the United States.

87. Upon information and belief FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP shared in expenses, promotions advertising and or marketing of the vessels in the United States and Florida.

88. Upon information and belief FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP shared in the profits of or mutually benefited financially from the sale and service of vessels in the United States and Florida.

89. Upon information and belief FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP shared in the losses which may have been incurred from the sale and service of vessels in the United States and Florida.

90. At all times material hereto there was a joint venture FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP and each of the venturers acted in the course and scope of that venture with respect to the sale and marketing of the vessel to Plaintiff.

**THE PURCHASE**

91. The PERSHING vessel was purchased by The Notorious Skipper LLC as assignee of Nicholas D. DiCello for $6,794,130.20 for personal and family use.

92. The FERRETTI GROUP Privacy Policy provided to Plaintiff at time of closing was issued by the manufacturer of the boat, FERRETTI S.p.A.

93. The Warranty Card presented to Plaintiff at time of closing was titled PERSHING WARRANTY CARD. The body of the warranty card refers to a **Ferretti Yachts** Warranty which was never produced to Plaintiff. The Warranty Card provides

"I understand that the **Ferretti Yachts Warranty** is effective only after I have completed, dated and signed this Warranty Card, and it has been received by Ferretti Group USA. I also understand that the **Ferretti Yachts Warranty** is the only warranty given by **Ferretti Yachts** and that it applies only to the boat I am purchasing identified on the Warranty Card." (emphasis supplied)

94. Plaintiff did not receive a Ferretti Yacht Warranty.

95. The Closing Packet also contained an ACKNOWLEDGMENT OF RECEIPT OF PERSHING LIMITED HULL WARRANTY STATEMENT although no such PERSHING LIMITED HULL WARRANTY was ever produced.

96. A Limited Warranty for the subject vessel was issued on behalf of FERRETTI S.p.A. by ALLIED MARINE, INC. doing business as business as FERRETTI GROUP USA.

97. Plaintiff accepted the PERSHING based upon the reasonable assumption of the vessel would function as intended and the Warranty would repair any defects that would exist or develop in a timely manner.

98. The PERSHING vessel was delivered to Nicholas D DiCello on or about July 24, 2020.

99. After delivery of the vessel numerous defects were discovered which, unbeknownst to the purchaser had existed at the time of manufacture and delivery of the vessel and which rendered the vessel unseaworthy, unreliable and unsafe to operate.

**FUEL TANK DEFECTS RESULTING IN FUEL LEAKING INTO HULL, STRUCTURAL STRINGERS AND ENGINE ROOM.**

100. September 21, 2020 The captain discovered approximately 4 gallons of fuel in the aft section of the engine room. An inspection of the fuel filters on the main engines and generators along with the fuel supply & return lines failed to detect signs of a fuel leak.

101. September 22, 2020 The captain found more fuel in the engine room bilge. The leak was observed at the aft port engine support stringer 17 feet aft of the fuel tank bulkhead.  The source of the fuel leak was a crack inside the port engine stringer's limber hole.

102. September 22, 2020 Warrantor was notified of fuel leak and was requested to respond under the yacht's warranty.

103. September 23, 2020 Warrantor came to inspect the fuel leak.

104. September 24, 2020 ALLIED MARINE doing business as FERRETTI GROUP USA as agent of the manufacturer, FERRETTI S.p.A. took physical possession of the PERSHING.

105.      September 24, 2020 The PERSHING was moved to Lauderdale Marine Center (LMC) for repair.

106.      September 25, 2020 All Fuel removed from the fuel tank.

107.      September 25 and 27, 2020 Offshore Marine Inspections was hired by the Ferretti Group of Americas to conduct Thermographic Testing of the fuel tank & hull to determine the source of fuel leaking from fuel tank running aft to engine room stringer.

108.      September 28, 2020 The PERSHING's Fuel tank cover plates were removed from the Master Stateroom, Galley & Engine room. The Galley floor had to be cut to assess the aft fuel tank cover plate.

109.      September 29, 2020 The fuel tanks were pressure washed and drained of any excess water and debris.

110.      September 30, 2020 The first inspection of the inside fuel tank was conducted without determining the source of the leak.

111.      September 30, 2020 The fuel tank cover plates were closed and sealed to permit pressure testing of the tank.  The fuel tank was pressurize to 2.0 PSI at 4:30 PM.

112.      October 1, 2020 The fuel tank pressure was 0.0 PSI at 8:30 AM. All air pressure leaked out overnight. The air pressure pushed fuel from the port main engine stringer out from the crack in the aft engine room limber hole.

113.      October 1, 2020 Warrantor drilled into the Port Engine stringer approximately 3" high from bottom of engine stinger and discovered fuel inside.

114.      October 5, 2020 Warrantor received information from Italy on how to fix the fuel tank leak. Warrantor cut into the port stringer in the fuel tank.

115.     October 6, 2020 Warrantor attempted fiberglass repair in fuel tank bulkhead and new limber hole.   Warrantor constructed & fiber glassed the stringer.

116.     October 6, 2020 The PERSHING's Captain expressed concern over fuel penetration into the stringers' core material.  The Warrantor told the Captain that the foam core in the stringers was closed foam cell and would not absorb fuel.  The captain tested a piece of foam and determined that contrary to the representations of the Warrantor the foam absorbs fuel.

117.     October 7, 2020 The Warrantor's first attempt to perform a fiberglass repair in fuel tank was completed.

118.     October 7, 2020 The Warrantor cut 1" hole in port engine port stringer approximately 3" from bottom of bilge - Fuel leaked out

119.     October 8, 20202 Warrantor's second attempt at fiberglass repair was commenced by adding an additional five layers of fiberglass and resin to aft fuel tank bulkhead and stringer area.

120.     October 12, 2020 Warrantor prepared the fuel tank for a second pressure test by closing and sealing fuel tank cover plates, valves and supply lines capped off and sealed with fuel rated sealant. The fuel tank pressurized to 1.5 PSI at 4:10 PM.  Fuel was observed leaking out of stringer when under pressure.

121.     October 13, 2020 The Warrantor's pressure test failed when the fuel tank air pressure was 0.0 PSI at 8:10 AM.

122.     October 14, 2020 Warrantor began third attempted fiberglass repair.  Warrantor added more fiberglass and resin to the area of first repair.  Warrantor added two more layers to the area thought to be leaking fuel.

123.     October 15, 2020 Warrantor prepared the Fuel tank for a third pressure test by closing and sealing the fuel cover plates.  The fuel tank was pressurized to 1.5 PSI. The pressure dropped within 1 hour. Within 4 hours the fuel tank air pressure was 0.0 PSI Residual fuel leaked out of stringer when under pressure.

124.     October 16, 2020 Warrantor waited for instructions from Italy on how to repair the fuel tank.

125.     October 19, 2020 Warrantor filled the fuel tank with 650 Gallons of fresh water and 300 pound of ice for the thermal imaging of the hull.  The purpose was to look for cold water running from fuel tank to engine room stringer.

126.     October 19, 2020 The fuel tank cover plates placed back on and sealed in preparation of the fourth pressure test.  The fuel tank was pressurized only to 1.0 PSI.

127.     Oct 19, 2020 Warrantor retained Offshore Marine Inspections to perform a second thermal imaging of the hull. Imaging discovered cold water at the aft fuel tank bulkhead and outboard of the stringer. Within 4 hours the fuel tank air pressure was 0.0 PSI. Water & Fuel are still leaked out of stringer under pressure

128.     Oct 19, 2020 At the time of thermal imaging Warranty Administrator Nicola Rossi stated the "cap" between the fuel tank and the engine room stringer is compromised due to the fuel ingestion into the engine room stringer and the port engine stringer. The port stringer foam discovered to have fluid inside it.

129.     Oct 20th The Warrantor attempted its fourth fiberglass repair. Warrantor prepared area approximately 20" X 10" to fiberglass outboard of original repair.

130.     Oct 22, 2020 Warrantor added three layers of fiberglass matt and resin to the area of suspected fuel leak

131.    Oct 26, 2020 Warrantor sealed fuel tank for the fifth pressure test. At 1:00 PM Warrantor pressurized the fuel tank to 3.0 PSI.  At 4:30 PM the fuel tank decreased to 2.0 PSI. It was observed that the Fuel tank was not holding pressure and there was leaking from the stringers.

132.    Oct 27, 2020 At 8:00 AM the fuel tank pressure was 0.0 PSI.

133.    Oct 27, 2020 Warrantor cut 5"X 5" section of flooring in engine room , approximately 18" aft of fuel tank - next to port engine support stringer.  Fuel intrusion into the hull was discovered

134.    Warrantor has not repaired the fuel leaks despite many attempts.

135.    Warrantor has not returned the PERSHING to Plaintiff.

136.    Warrantor has had physical possession of the yacht for over 5 months and remains in possession.

137.    Plaintiff had possession for only 2 months before Warrantor took possession of the PERSHING.

138.    As of the date of filing suit Warrantor had physical possession of the PERSHING two and half times as long as Plaintiff.

139.    The PERSHING is unsafe and unfit by any standard as fuel is leaking from the fuel tanks into the engine compartment, structural stringers and into the hull.

140.    On March 1, 2021 Plaintiff sent written notification to Warrantor and Seller of Revocation of Acceptance and intent to rescind the contract.

141.    The March 1, 2021 notice also informed the Warrantor and Seller the vessel was unsafe, unusable, unmerchantable, unseaworthy, non-conforming to industry standards and is incapable of performing for its intended use and demanded a refund.

142.     The PERSHING has been operated only 10 hours during the two months of possession over the seven month period of ownership.

143.     During the seven month period of ownership of the PERSHING, ALLIED MARINE d/b/a FERRETTI GROUP USA and FERRETTI GROUP of AMERICA d/b/a FERRETTI GROUP has been aware of the various issues plaguing the PERSHING.

144.     During the seven month period of ownership the PERSHING has been serially under repair attempting to address the dangerous fuel leaks but without success preventing safe and reliable operation of the PERSHING.

145.     Plaintiff has advised the Defendants of the dangerous defect and afforded them substantial opportunity to cure or repair the dangerous defect, but Defendants have been unable or unwilling to rectify and repair the problem.

**146.**     Plaintiff has not had reasonable use of the boat for normal cruising enjoyment during the two months of possession during the seven month period of ownership.   The engines have logged only 10 hours of operation while owner was on board.

**OTHER UNCURED DEFECTS**

147.     The PERSHING's Retractable Sunroof Leaks. Warrantor sent New Level Marine to investigate and correct the issue. Water continues to leak from the sunroof over the helm area. Damaging the interior wall panels, leather trim, helm seats and wood floor.

148.     The PERSHING Exhibits Fiberglass Cracking in the fiberglass sunshade. Warrantor was on notice of this issue since August 3, 2020.  The crack has grown and is propagating.  Warrantor has not repaired.

149.     The PERSHING's forward deck hatches require warranty repair.  The stainless steel support is separating from the fiberglass hatch.  Warrantor has not corrected.

**PARTIES' STATUS**

150.     Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

151.     Defendant FERRETTI S.p.A. is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2304(4) and (5).

152.     Defendant FERRETTI S.p.A. is a merchant and seller of the vessel and goods of the kind of the vessel re within the contemplation of Fla. State 672.314 *et seq*.

153.     Defendant ALLIED MARINE INC., doing business as FERRETTI GROUP USA, is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2304(4) and (5).

154.     Defendant FERRETTI GROUP OF AMERICA, LLC.d/b/a FERRETTI GROUP is a "supplier" as defined in 15 U.S.C. § 2304(4) and (5).

155.     Defendant ALLIED MARINE INC., doing business as FERRETTI GROUP USA, is a merchant and seller of the vessel and goods of the kind of the vessel re within the contemplation of Fla. State 672.314 *et seq*.

156.     Defendant FERRETTI GROUP OF AMERICA, LLC.d/b/a FERRETTI GROUP is a merchant and seller of the vessel and goods of the kind of the vessel re within the contemplation of Fla. State 672.314 *et seq*.

157.     Defendant FERRETTI S.p.A is a manufacturer.

158.     Defendant ALLIED MARINE dba FERRETTI GROUP USA is a manufacturer of the PERSHING.

159.     The 2020 PERSHING 8X-06 is a "consumer  product" as defined in 15 U.S.C. §2301.

## MARKETING OF THE PERSHING

160.     The PERSHING was marketed as comparable to living on a personal private island to enjoy moments with loved ones in "total safety."  Ferretti advertised:

### Your private island

Owning a yacht is like living on your personal private island. A place with no limits, where you can enjoy unique moments with your loved ones in total safety and privacy. A yacht is like a private island that moves with you. Allowing you to explore new places every day in absolute freedom, whenever you want. And a yacht is a safer place to be than any 5-star hotel or luxury resort. Choosing to become a yacht owner means choosing to invest in your wellbeing and peace of mind. Your yacht as your own private island, where you are the ultimate VIP.

161.     The Plaintiff's expectation was that his PERSHING would permit him to "explore new places every day in absolute freedom" and would be "a safer place" than any 5-star hotel."  The yacht was marketed to invest in "wellbeing and peace of mind."

162.     The defects in the PERSHING prevented the Plaintiff the level of enjoyment and expectation that comes with the ownership of a new luxury Italian yacht.  The defects rendered the PERSHING unsafe  and incapable of being operated reliably to "explore new places."

163.     Plaintiff had 10 hours use of the PERSHING due to manufacturing  and design defects.

164.     Plaintiff has not received the benefit of the bargain.

165.     The FERRETTI GROUP USA Warranty fails at its essential purpose.

166.     FERRETTI S.p.A. advertised and marketed its vessels, such as the subject vessel, to consumers located in the United States and, specifically in Florida and in Broward County.

167.     ALLIED MARINE INC., doing business as FERRETTI GROUP USA advertised and marketed is vessels, such as the subject, vessel to consumers located in the United States and, specifically in Florida and in Broward County.

168.     Defendant FERRETTI GROUP OF AMERICA, LLC.d/b/a FERRETTI GROUP advertised and marketed is vessels such as the subject vessel to consumers located in the United States and, specifically in Florida and in Broward County.

169.     Plaintiff performed all conditions precedent to this action or the conditions have occurred.

170.     Plaintiff must act at this time because the Warranty issued by ALLIED MARINE d/b/a FERRETTI GROUP USA requires legal remedies be sought within one year. The Warranty provides:

> "legal claims relating to any alleged problem with this Yacht will be barred unless suit is commenced within one (1) year from the date the cause of action accrues, regardless of the time remaining in the applicable warranty period."

171.     The Warranty contains a good faith requirement upon the consumer.

> It is Owner's obligation to fully cooperate with FERRETTI to allow repair or replacement as provided above, and the failure to cooperate in good faith will void this warranty.

172.     It is a tenet of Florida law that such obligations are reciprocal in nature.

173.     The Warrantor breached the Warranty due to its bad faith by not returning the purchase price when the nature and extent of the issues with the boat  were known.

## COUNT I
## BREACH OF WARRANTY AS TO ALLIED MARINE dba FERRETTI GROUP USA - THE WARRANTY FAILS OF ITS ESSENTIAL PURPOSE

174.    The allegations contained in paragraphs 1 through 173 above are realleged and incorporated as if fully stated herein.

175.    Plaintiff has privity with ALLIED MARINE d/b/a FERRETTI GROUP USA.

176.    ALLIED MARINE d/b/a FERRETTI GROUP USA was the Warrantor as it issued the written FERRETTI GROUP USA LIMITED WARRANTY (FOR PERSHING YACHTS).

177.    The Warrantor, ALLIED MARINE d/b/a/ FERRETTI GROUP USA. had seven months to repair or replace the defective condition of the PERSHING without success.

178.    Plaintiff has advised the Warrantor of the defects and afforded it an opportunity to cure or repair the defects but Defendants have been unable or unwilling to rectify and repair the problems described in paragraphs 100 to 133 and 147 to 149 above.

179.    A reasonable or seasonable time period to rectify the defects has expired.

180.    The boat is unsafe and not capable of navigation in its current condition.

181.    Plaintiff is unable to use the boat as advertised and intended as a place "where you can enjoy unique moments with your loved ones in total safety . . . allowing you to explore new places" bringing "wellbeing and peace of mind."

182.    Plaintiff has had physical possession of the PERSHING for only two months during the seven month period of ownership.

183.    Plaintiff has had only 10 hours use of the boat.

184.    The warranty restrictions, disclaimers and/or limitations contained in the warranty are unconscionable under Florida Statute § 627.302, et seq., ineffective under the MMWA,

15 U.S.C. § 2301, et seq., violate FTC rules interpreting the MMWA, and violate Defendants' duty of good faith imposed under the Uniform Commercial Code and as a matter of law.

185.     Florida Statue 672.719 (2) provides "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Code."

186.     The Comment 1 to section 2-719 explains the policy behind this section:

> [I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus . . . where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.

187.     Failure of the warranty to meet its essential purpose because of the Warrantor's failure or inability to repair the PERSHING provides plaintiff with the general remedy under the UCC which includes Refund or Revocation of Acceptance.

188.     The exclusive remedy under the ALLIED MARINE d/b/a FERRETTI GROUP USA Warranty of repair or replace fails in its essential purpose because the repair or replacement of only certain items, does not satisfy the purpose of rectifying defects of the subject vessel under the circumstances of this case where the entire vessel is effectively rendered defective, unreliable, unmerchantable, nonconforming, unfit, unseaworthy, dangerous and unrepairable and the warrantor has been in possession of the PERSHING for five months without returning it to the possession of the Plaintiff.

189.    In addition the warranty provides that the determination of defect and remedy of the defect is at the sole discretion of the Warrantor which is in violation of the MMWA.

190.    The Warranty further attempts to disclaim the remedies of rescission or revocation of acceptance which is unconscionable and contrary to the Florida Uniform Commercial Code and MMWA in context of this matter where the PERSHING has a major health, life, safety defect caused by fuel leaking out of the fuel tanks into the PERSHING'S structural stringers, hull and engine room preventing operation and possession which has not been repaired after 5 months.

191.    The limitation on remedies further render the warranty offered by ALLIED MARINE d/b/a FERRETTI GROUP USA as illusory, depriving Plaintiff of reasonable protections against breach and the fair quantum of remedies guaranteed by the Uniform Commercial Code

192.    As a result of the foregoing Plaintiff has sustained damages and is entitled to relief under the Uniform Commercial Code including but not limited to actual damages as well as consequential and incidental damages.

193.    The warranty offered by Defendant, ALLIED MARINE d/b/a FERRETTI GROUP USA violates the requirements of the MMWA, 15 U.S.C. § 2301, *et seq.*, entitling Plaintiff to all remedies provided thereunder.

194.    Accordingly, Plaintiff may resort to all remedies under the MMWA, the Uniform Commercial Code and common law including refund and direct, consequential and incidental damages.

**WHEREFORE**, Plaintiff demands judgment against ALLIED MARINE d/b/a FERRETTI GROUP USA for consequential, compensatory, expectancy, resulting, incidental and reliance damages, prejudgment interest, and for costs, and attorneys' fees pursuant to the Florida Uniform Commercial Code and MMWA, 15 U.S.C. § 2310(d); and for such other and further relief that this Honorable Court deems just and proper.

<u>**COUNT II**</u>
<u>**BREACH OF WARRANTY AS TO FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP AS JOINT VENTURERS**</u>

195.     The allegations contained in paragraphs 1 through 173 above are realleged and incorporated as if fully stated herein.

196.     Plaintiff has privity with ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP.

197.     Plaintiff has privity with FERRETTI S.p.A., as ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP are agents for FERRETTI S.p.A.

198.     FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP as joint venturers with respect to the sale, distribution and service of the vessel are jointly obligated under the warranty issued to Plaintiff for the vessel.

199.     FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP had seven months to repair or replace the defective components of the PERSHING without success.

200.     Plaintiff has advised the FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP of the defects and afforded them an opportunity to cure or repair the defects but Defendants have been unable or unwilling to rectify and repair the problems described in paragraphs 100 to 113 and 147 to 149.

201.     A reasonable or seasonable time period to rectify the defects has expired.

202.     The boat is unreliable and unsafe in its current condition.

203.     Plaintiff is unable to use the boat as advertised and intended as a place "where you can enjoy unique moments with your loved ones in total safety . . . allowing you to explore new places" bringing "wellbeing and peace of mind."

204.     Plaintiff has had physical possession of the PERSHING for only two months during the seven month period of ownership.

205.     Plaintiff has had only 10 hours use of the boat.

206.     The warranty restrictions, disclaimers and/or limitations contained in the warranty are unconscionable under Florida Statute § 627.302, et seq., ineffective under the MMWA, 15 U.S.C. § 2301, et seq., violate FTC rules interpreting the MMWA, and violate Defendants, duty of good faith imposed under the Uniform Commercial Code and as a matter of law.

207.     Florida Statue 672.719 (2) provides "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Code."

208.     The Comment 1 to section 2-719 explains the policy behind this section:

[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within

this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus . . . where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.

209.     Failure of the warranty to meet its essential purpose because of the Defendants' failure or inability to repair the PERSHING provides plaintiff with the general remedy under the  UCC which includes Refund or Revocation of Acceptance.

210.     The exclusive remedy under the Warranty of repair or replace fails in its essential purpose because the repair or replacement of only certain items, does not satisfy the purpose of rectifying defects of the subject vessel under the circumstances of this case where the entire vessel is effectively rendered defective, unreliable, unmerchantable, nonconforming, unfit, unseaworthy, dangerous and unrepairable.

211.     In addition the warranty provides that the determination of defect and remedy of the defect is at the sole discretion of the FERRETTI in violation of the MMWA.

212.     The limitation on remedies further render any warranty provided to Plaintiff  is illusory, depriving Plaintiff of reasonable protections against breach and the fair quantum of remedies guaranteed by the Uniform Commercial Code.

213.     The Warranty further attempts to disclaim the remedies of rescission or revocation of acceptance which is unconscionable and contrary to the Florida Uniform Commercial Code and MMWA in context of this matter where the PERSHING has a major health, life, safety defect caused by fuel leaking out of the fuel tanks into the PERSHING'S structural stringers, hull and engine compartment preventing operation and possession which has not been repaired after 5 months.

214.     As a result of the foregoing Plaintiff has sustained damages and is entitled to relief under the Uniform Commercial Code including but not limited to actual damages as well as consequential and incidental damages.

215.     The warranty offered by Defendants, further violates the requirements of the MMWA, 15 U.S.C. § 2301, *et seq.*, entitling Plaintiff to remedies thereunder.

216.     Accordingly, Plaintiff may resort to all remedies under the MMWA, the Uniform Commercial Code and common law including refund and direct, consequential and incidental damages.

**WHEREFORE**, Plaintiff demands judgment against FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP as joint venturers for consequential, compensatory, expectancy, resulting, incidental and reliance damages, prejudgment interest, and for costs, and attorneys' fees pursuant to the Florida Uniform Commercial Code and MMWA, 15 U.S.C. § 2310(d); and for such other and further relief that this Honorable Court deems just and proper.

## COUNT III- REVOCATION OF ACCEPTANCE
## FERRETTI GROUP OF AMERICA, LLC dba FERRETTI GROUP

217.     The allegations contained in paragraphs 1 through 173 above are realleged and incorporated as if fully stated herein.

218.     The cause of action alleged in this Count is brought pursuant to the MMWA, 15 U.S.C. § 2301, *et seq*. and Florida Statute 672.608.

219.     Prior to purchase, at delivery and after delivery, Defendants represented to Plaintiff that the subject vessel was capable, suitable, appropriate and free of defects for the use intended by Plaintiff as a recreational vessel.

220.     After acceptance of delivery of the vessel, Plaintiff learned that the vessel was not designed, constructed, fabricated, manufactured or assembled as warranted.

221.     The subject vessel fails to conform due to the existence of defects in material, design, construction, workmanship, fabrication, manufacturing and assembly as more particularly set forth above in paragraphs 100 to 133 and 143 to 149.

222.     The nonconformity and deficiencies in material, design, construction, workmanship, fabrication, manufacturing and assembly are significant and have directly and substantially impaired the value of the vessel.

223.     Plaintiff has had physical possession of the PERSHING for only two months of his 7 month period of ownership and only had use of the PERSHING for 10 hours before ALLIED MARINE took physical possession of the PERSHING.

224.     Plaintiff has been denied the benefit of the bargain when purchasing the vessel. Plaintiff has not had the benefit of the use of the PERSHING.  Plaintiff was simply not sold the goods he bargained for and have, therefore, been damaged to the full extent of the purchase price, consequential and incidental costs, as well as attorney's fees pursuant to statute.

225.     Plaintiff relied upon the representations from Defendants that they would honor the warranty commitments and repair or replace the vessel and any defects in materials or workmanship as identified herein, to permit the vessel to operate as a recreational vessel.

226.     Notice of the discovery of the vessel's defects was provided to Defendants within a reasonable time after the discovery of the defects.

227.     Defendants have  had sufficient opportunity to cure but failed to cure the defects in the vessel.

228.     Plaintiff has been deprived the use of the PERSHING since discovery of the leaking fuel tank on September 22, 2020.

229.     As a direct and proximate result of the failure to satisfy contractual obligations and the nonconformity and deficiencies in design, construction, fabrication, manufacturing and or assembly of the vessel, Plaintiff has elected to revoke its acceptance of a non-conforming subject vessel and seeks return of its purchase price, as well as actual, direct, consequential, incidental, and reliance damages which include but are not limited to the purchase price of the subject vessel, together with prejudgment interest, costs, and attorneys' fees pursuant to the MMWA, 15 USC § 2310(d) and Florida Statute 672.608.

**WHEREFORE**, Plaintiff demands judgment against FERRETTI GROUP OF AMERICA, LLC dba FERRETTI GROUP for consequential, compensatory, expectancy, resulting, incidental and reliance damages, prejudgment interest, and for costs, and attorneys' fees pursuant to the Uniform Commercial Code and MMWA, 15 U.S.C. § 2310(d); and for such other and further relief that this Honorable Court deems just and proper.

<u>COUNT IV</u>
### <u>BREACH OF EXPRESS WRITTEN WARRANTY against ALLIED MARINE dba FERRETTI GROUP USA</u>

230.     The allegations contained in paragraphs 1 through 173 above are realleged and incorporated as if fully stated herein.

231.     Plaintiff has privity with ALLIED MARINE d/b/a FERRETTI GROUP USA.

232.     ALLIED MARINE d/b/a FERRETTI GROUP USA was the Warrantor as it issued the written FERRETTI GROUP USA LIMITED WARRANTY (FOR PERSHING YACHTS).

233.     Defendant ALLIED MARINE INC., doing business as FERRETTI GROUP USA individually and as agent of FERRETTI S.P.A. expressly warranted to repair or replace all defects in items manufactured by FERRETTI S.p.A and to repair or replace all defects in the Yacht's hull and fiberglass structural components in the boat purchased by Plaintiff.

234.     Plaintiff discovered numerous defects in the materials and workmanship of vessel, including, but not limited to defects in the hull, engines, electrical system and fittings and other equipment on the vessel.

235.     All defects described above in paragraphs 100 to 133 and 147 to 149 were covered items under the terms of the express written warranty.

236.     After discovering the defects, Plaintiff contacted Defendant on numerous occasions within the warranty period and requested that the defects be repaired or replaced.

237.     As required by Defendant's warranty procedures, Plaintiff cooperated fully with FERRETTI  to allow repair or replacement of the defects

238.     Defendant and/or the agents or representatives of Defendant inspected and attempted to perform repairs on the warranted defects, but were unable to correct the problems after numerous attempts.

239.     Defendant had a reasonable opportunities to correct the defects in the materials and workmanship of the vessel  but failed to do so.

240.     Alternatively, the Defendant refused to honor the warranty and recognize warranty claims.

241.     The action of Defendant in refusing and continuing to refuse to correct the defects in the materials and workmanship constitute a breach of the express warranty covering the vessel and is a violation of the Magnuson Moss Warranty Act.

242.     Defendant ALLIED MARINE INC., doing business as FERRETTI GROUP USA, refused or was unable to repair the warranted defects in a reasonable time, failed to repair warranted defects after a reasonable number of attempts, or failed to honor the express written warranty.

243.     As a result of Defendant's breach of the express warranty, it has become necessary for Plaintiff to retain the undersigned attorneys and has incurred and continues to incur legal fees, costs, and expenses in relation to this lawsuit.

244.     As a result of Defendant's failure to honor the terms of the express written warranty, Plaintiff has sustained damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant ALLIED MARINE INC., doing business as FERRETTI GROUP USA, for damages under the Uniform Commercial Code and MMWA, including consequential, compensatory, expectancy, resulting, incidental and reliance damages, prejudgment interest, and for costs, and attorneys' and any other relief permitted by law.

## <u>COUNT V</u>
## <u>BREACH OF EXPRESS WARRANTY AS TO FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP AS A JOINT VENTURERS</u>

245.     The allegations contained in paragraphs 1 through 173 above are realleged and incorporated as if fully stated herein.

246.     Plaintiff has privity with ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP.

247.     Plaintiff has privity with FERRETTI S.p.A., as ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP are agents for FERRETTI S.p.A.

248.     FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP as joint venturers with respect to the sale, distribution and service of the vessel were jointly obligated under the warranty issued to Plaintiff for the vessel.

249.     Defendants FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP as joint venturers expressly warranted to repair or replace all defects in items manufactured by FERRETTI S.p.A  and to repair or replace all defects in the Yachts hull and fiberglass structural components in the  boat purchased by Plaintiff.

250.     Plaintiff discovered numerous defects in the materials and workmanship of vessel, including, but not limited to defects in the hull, engines, electrical system and fittings and other equipment on the vessel.

251.     All defects described in paragraphs 100 to 133 and 147 to 149 above were covered items under the terms of the express written warranty.

252.     After discovering the defects, Plaintiff contacted Defendant FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP as joint venturers on numerous occasions within the warranty period and requested that the defects be repaired or replaced.

253.     As required by Defendant's warranty procedures, Plaintiff cooperated fully with the Joint Venturers to allow repair or replacement of the defects

254.     Defendants FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP as joint venturers and/or the agents  or representatives of Defendant inspected and attempted  to

perform repairs on the warranted defects, but were unable to correct the problems after numerous attempts.

255.     Defendants FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP as joint venturers have had a reasonable opportunities to correct the defects in the materials and workmanship of the vessel but failed to do so.

256.     Alternatively, the Defendants refused to honor the warranty and recognize warranty claims.

257.     The action of Defendants in refusing or inability to correct and continuing to refuse or inability to correct the defects in the materials and workmanship constitute a breach of the express warranty covering the vessel and is a violation of the Magnuson Moss Warranty Act.

258.     Defendants Defendant FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP as joint venturers failed to  repair  the warranted defects in a reasonable time, failed to repair warranted defects after a reasonable number of attempts, or failed to honor the express written warranty.

259.     As a result of Defendants' breach of the express warranty, it has become necessary for Plaintiff to retain the undersigned attorneys and has incurred and continues to incur legal fees, costs, and expenses in relation to this lawsuit.

260.     As a result of Defendants' failure to honor the terms of the express written warranty, Plaintiff has sustained damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant FERRETTI S.p.A., ALLIED MARINE D/B/A FERRETTI GROUP USA and FERRETTI GROUP of AMERICA D/B/A FERRETTI GROUP as joint venturers for damages the under Uniform Commercial Code and MMWA, including consequential, compensatory, expectancy, resulting, incidental and reliance damages, prejudgment interest, and for costs, and attorneys' fees and any other relief permitted by law.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY OF MECHANTIBILITY**
**FERRETTI S.P.A., ALLIED MARINE INC., doing business as FERRETTI GROUP USA**

261.    The allegations contained in paragraphs 1 through 173 above are realleged and incorporated as if fully stated herein.

262.    Plaintiff has privity with ALLIED MARINE D/B/A FERRETTI GROUP USA.

263.    Plaintiff has privity with FERRETTI S.p.A., as ALLIED MARINE D/B/A FERRETTI GROUP USA is agent for FERRETTI S.p.A.

264.    Plaintiff has privity with FERRETTI S.p.A. as the Seller of the PERSHING.

265.    FERRETTI S.p.A., and ALLIED MARINE INC., doing business as FERRETTI GROUP USA are suppliers of the PERSHING.

266.    At all times material hereto FERRETTI S.p.A., and ALLIED MARINE INC., doing business as FERRETTI GROUP USA, acted in concert to effectuate the sale and distribution of vessels in the United States and particularly in Florida which were manufactured by FERRETTI S.p.A.

267.    FERRETTI GROUP OF AMERICA, LLC dba FERRETTI GROUP USA individually and as agent of FERRETTI S.p.A entered into an agreement for the sale of

consumer goods to the Plaintiff. That agreement provided for issuance of a written warranty for the vessel by the manufacturer.

268.     Defendant ALLIED MARINE INC., doing business as FERRETTI GROUP USA individually and as agent of FERRETTI S.p.A issued the manufacturers written warranty required by the purchase and sale agreement.

269.     Plaintiff has privity with Defendant ALLIED MARINE INC., doing business as FERRETTI GROUP USA individually and as agent of FERRETTI S.p.A and FERRETTI GROUP OF AMERICA, LLC dba FERRETTI GROUP and FERRETTI S.p.A. as described in paragraphs 5 through 90.

270.     Under Florida Law implied in every contract for the sale of goods is an implied warranty of merchantability.

271.     FERRETTI S.p.A., ALLIED MARINE INC., doing business as FERRETTI GROUP USA, and FERRETTI GROUP OF AMERICA, LLC dba FERRETTI GROUP are suppliers, manufacturers and warrantors as those terms are defined by 15 U.S.C. § 2301.

272.     As suppliers of consumer goods, the Defendants are precluded by law from disclaiming the implied warranty of merchantability where a written warranty is issued. Any disclaimer of the implied warranties are ineffective as a matter of law. 15 U.S.C. § 2308 during the duration of the written Limited Warranty.

273.     The written Limited Warranty is still effective and in force.

274.     The vessel was delivered with defects including, but not limited to defects in the hull and fuel tanks of the vessel resulting in fuel communicating through the PERSHING'S structural stringer systems into the hull and engine compartment rendering it unmerchantable.

275.     Plaintiff contacted Defendants. through its representatives and advised Defendants of the defects in the vessel.

276.     Defendants FERRETTI S.P.A., and ALLIED MARINE INC., doing business as FERRETTI GROUP USA, breached the implied warranty of merchantability by manufacturing and supplying the yacht which was defective and not fit for the ordinary purposes for which it was to be used.

277.     Plaintiff has incurred damage as a result of FERRETTI S.P.A., and ALLIED MARINE INC., doing business as FERRETTI GROUP USA, breach of the implied warranties of merchantability, has lost the use of the vessel and incurred and all reasonable costs related thereto.

**WHEREFORE,** Plaintiff demands judgment against FERRETTI S.P.A., and ALLIED MARINE INC., doing business as FERRETTI GROUP USA for damages, including consequential, compensatory, expectancy, resulting, incidental and reliance damages, prejudgment interest, and for costs, and attorneys' fees and any other relief permitted by law.

## COUNT VII
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
## FERRETTI S.P.A., ALLIED MARINE INC., doing business as FERRETTI GROUP USA

278.     The allegations contained in paragraphs 1 through 173 above are realleged and incorporated as if fully stated herein.

279.     Plaintiff has privity with ALLIED MARINE D/B/A FERRETTI GROUP USA.

280.     Plaintiff has privity with FERRETTI S.p.A. as Seller of the PERSHING.

281.      Plaintiff has privity with FERRETTI S.p.A., as ALLIED MARINE D/B/A FERRETTI GROUP USA is agent for FERRETTI S.p.A.

282.     FERRETTI S.p.A., and ALLIED MARINE INC., doing business as FERRETTI GROUP USA are suppliers of the PERSHING.

283.     At all times material hereto FERRETTI S.p.A., and ALLIED MARINE INC., doing business as FERRETTI GROUP USA, acted in concert to effectuate the sale and distribution of vessels in the United States and particularly in Florida which were manufactured by FERRETTI S.p.A.

284.     FERRETTI GROUP OF AMERICA, LLC dba FERRETTI GROUP USA individually and as agent of FERRETTI S.p.A entered into an agreement for the sale of consumer goods to the Plaintiff. That agreement provided for issuance of a written warranty for the vessel by the manufacturer.

285.     Defendant ALLIED MARINE INC., doing business as FERRETTI GROUP USA individually and as agent of FERRETTI S.p.A issued the manufacturers written warranty required by the purchase and sale agreement.

286.     Plaintiff has privity with Defendant ALLIED MARINE INC., doing business as FERRETTI GROUP USA individually and as agent of FERRETTI S.p.A and FERRETTI GROUP OF AMERICA, LLC dba FERRETTI GROUP and FERRETTI S.p.A. as described in paragraphs 5 through 90.

287.     Under Florida Law implied in every contract for the sale of goods is an implied warranty of Fitness for a Particular Purpose.

288.     FERRETTI S.p.A., ALLIED MARINE INC., doing business as FERRETTI GROUP USA, and FERRETTI GROUP OF AMERICA, LLC dba FERRETTI GROUP are suppliers, manufacturers and warrantors as those terms are defined by 15 U.S.C. § 2301.

289.     As suppliers of consumer goods, the Defendants are precluded by law from disclaiming the implied warranty of Fitness for a Particular Purpose where a written warranty is issued during the duration of the written Limited Warranty. Any disclaimer of the implied warranties are ineffective as a matter of law. 15 U.S.C. § 2308 as the written Limited Warranty is still in effect.

290.     Defendant knew the Plaintiff's purchase of the PERSHING was for personal enjoyment and use of the watercraft as a luxury yacht capable of safely navigating to explore new  places every day in absoluter freedom.

291.     Defendant knew the buyer would be relying upon representations made that the yacht would be safe and capable of carrying the Plaintiff and his loved ones on voyages in absolute freedom.

292.     Pershing Yacht advertised its products were to provide the Plaintiff with:

A place with no limits, where you can enjoy unique moments with your loved ones in total safety and privacy. A yacht is like a private island that moves with you. Allowing you to explore new places every day in absolute freedom, whenever you want. And a yacht is a safer place to be than any 5-star hotel or luxury resort. Choosing to become a yacht owner means choosing to invest in your wellbeing and peace of mind.

293.     The vessel was delivered with defects including, but not limited to defects in the hull and fuel tanks of the vessel resulting in fuel communicating through the PERSHING'S structural stringer systems into the hull and engine compartment rendering it unfit as a high speed luxury watercraft.

294.     The defects in the hull and fuel tanks prevented the Plaintiff from using the yacht to explore new places, navigate safely or to use the PERSHING as a boat capable of navigation.

295.     Plaintiff contacted Defendants. through its representatives and advised Defendants of the defects in the vessel.

296.     Defendants FERRETTI S.P.A., and ALLIED MARINE INC., doing business as FERRETTI GROUP USA, breached the implied warranty of Fitness for Particular Purpose by manufacturing and supplying the yacht which was defective and not fit for the particular purposes for which it was advertised and to be used.

297.     Plaintiff has incurred damage as a result of FERRETTI S.P.A., and ALLIED MARINE INC., doing business as FERRETTI GROUP USA, breach of the implied warranties of fitness; has lost the use of the vessel and incurred and all reasonable costs related thereto.

**WHEREFORE,** Plaintiff demands judgment against FERRETTI S.P.A., and ALLIED MARINE INC., doing business as FERRETTI GROUP USA for damages, including consequential, compensatory, expectancy, resulting, incidental and reliance damages, prejudgment interest, and for costs, and attorneys' fees and any other relief permitted by law.

By:/s *Christopher R. Fertig*
CHRISTOPHER R. FERTIG, ESQ.
Florida Bar No.: 218421
chris.fertig@fertig.com
DARLENE M. LIDONDICI, ESQ.
Florida Bar No.: 516521
dml@fertig.com
FERTIG & GRAMLING
200 S.E. 13th Street
Fort Lauderdale, FL 33316
Telephone: 954-763-5020
Facsimile: 954-763-5412
*Counsel for Plaintiff*